UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT A. DEJESUS, | : | |
| Plaintiff, | : | **REPORT AND** |
| | : | **RECOMMENDATION** |
| - against - | : | |
| | : | **14-CV-5516 (WHP)(RLE)** |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

To the HONORABLE WILLIAM H. PAULEY, U.S.D.J.:

## I.    INTRODUCTION

Plaintiff Robert DeJesus ("DeJesus"), proceeding *in forma pauperis*, commenced this

action under the Social Security Act ("SSA"), 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3),

challenging a final decision of the Commissioner of Social Security (the "Commissioner")

denying his claim for disability benefits.  (Compl. at ¶ 8.)  DeJesus asks the Court to "modify the

decision of the Commissioner and grant him monthly maximum insurance and/or Supplemental

Security Income ("SSI") benefits retroactive to the date of the initial disability or, in the

alternative, to remand the case for reconsideration of the evidence."  (*Id.* at ¶ 9(c).)   DeJesus

argues that the decision of the Administrative Law Judge ("ALJ") was erroneous and not

supported by substantial evidence.  (*Id.* at ¶ 9.)  On January 12, 2015, the Commissioner moved

for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asking the

Court to affirm the Commissioner's decision and dismiss the Complaint.  (Defendant's Motion

for Judgment on Pleadings (Def. Mot.").)  For the reasons that follow, I recommend that the

Commissioner's motion be **DENIED**, and that the case be **REMANDED** for further

administrative proceedings.

## II.      BACKGROUND

### A. Procedural History

On July 30, 2004, the Social Security Administration listed DeJesus as disabled as of October 26, 2004. (Transcript of Administrative Proceedings ("Tr.") at 33.)  On December 2, 2011, the Commissioner notified DeJesus that as of December 6, 2011, he was no longer entitled to Disability Insurance Benefits because his condition had improved.  (*Id.* at 31, 57-59.)  DeJesus appeared before ALJ James Kearns on March 4, 2013.  (*Id.* at 45.)  The ALJ subsequently issued a decision on March 18, 2013, finding that DeJesus was not disabled under the SSA and was not entitled to disability insurance benefits.  (*Id.* at 25-41.)  DeJesus requested review by the Appeals Council on April 26, 2013.  (*Id.* at 24.)  The Appeals Council denied DeJesus's request for review on May 13, 2014, and the ALJ's decision became the Commissioner's final decision.  (*Id.*)  DeJesus filed this action appealing the decision of the ALJ on July 17, 2014.  (Pet'r Compl.)

### B. The ALJ Hearing

#### 1. Non-Medical Evidence

##### a. DeJesus's Testimony at the Hearing

DeJesus was born on May 7, 1971.  (Tr. at 45.)  He is five feet, ten inches tall and weighs 190 pounds.  (*Id.*)  DeJesus attended school until the seventh grade in the Dominican Republic. (*Id.* at 47.)  He moved to the United States in 1989 and does not speak English.  (*Id.*)  He has three children, ages 21, 18, and 4, and lives with his girlfriend, who works.  (*Id.* at 46.)  He has not received Social Security benefits since Decebmer 2011 and has no other source of income. (*Id.*)

DeJesus last worked in 2005 as a mover "shipping to the Dominican Republic," and as a helper in a restaurant kitchen. (*Id.* at 47-48.) He can no longer work because of his leg and kidney problems. (*Id.* at 48.) DeJesus's pain is constant and the medication that he takes for the pain does not help. (*Id.* at 51.) His pain disrupts his sleeping as well as his ability to sit or stand. (*Id.* at 50, 51.) He sees Dr. Glicklich[1] at Montefiore Medical Center every three months for his kidney and takes sixteen medications, two of which are for pain. (*Id.* at 48, 50.) DeJesus can walk three or four blocks without any problems and can lift and carry five to ten pounds before he starts to experience pain. (*Id.*)

On a typical day, DeJesus watches television at home or visits his family. (Tr. at 49.) When he leaves the house, he takes the train or the bus, although he has his driver's license. (*Id.* at 47.) When he cooks for himself, he uses the microwave or the oven but he does not go to the grocery store or do any housework other than his own laundry. (*Id.*) DeJesus travels to the Dominican Republic every year or two to see his family and his four-year-old child. (*See id.* at 49.) Last year, he stayed there for about two weeks. Five years ago DeJesus visited Miami to see his other children. (*Id.* at 50.)

### b. Vocational Expert

Vocational expert Raymond Sestar testified that a hypothetical person capable of working at the light exertional level who could only perform simple and repetitive tasks would not be able to perform DeJesus's previous jobs as a material handler or a kitchen helper. (Tr. at 52.) Such a person could complete work as a cleaner or housekeeper, cafeteria attendant, or a laundry folder. (*Id.*) Sestar further testified that these jobs were available on both a national and regional level, but that a person who was absent at least once per week without advance notice would not be able to find work. (*Id.* at 53.)

---

[1] Incorrectly transcribed as "Dr. Glicker" during ALJ hearing. (Tr. at 48.)

### 2. Medical Evidence[2]

#### a. Montefiore Medical Center

DeJesus received a kidney transplant at Montefiore Medical Center ("Montefiore") on

March 23, 2005. (*Id.* at 263-68.) On November 19, 2007, he also received a right total hip

replacement. (Tr. at 406-08, 566-68.) Following the hip replacement, rehabilitation specialist

Dr. Svetlana Tounina authored a note on November 29, 2007, indicating that DeJesus required a

commode because of a limited range of movement in his hip. (*Id.* at 285.) Montefiore

discharged DeJesus from physical therapy on November 30, 2007. (*Id.* at 275.)

On September 15 and 23, 2009, DeJesus returned to Montefiore complaining of lower back

pain. (*Id.* at 360-73.) On September 23, 2009, Dr. Steinberg indicated that DeJesus could move

all extremities, had a steady gait and did not appear to have any problems with his renal

transplant. (*Id.* at 361, 372.) Dr. Samdani nonetheless referred him to a nephrologist to check

for a herniated disc. (*Id.* at 372.) Additionally, an x-ray taken the same day showed no fracture,

dislocation, or evidence of prosthetic loosening. (*Id.* at 374.)

On December 1, 2011, Dr. R. Gauthier completed a Physical Residual Functional Capacity

Assessment for the SSA Administrative Record and found that DeJesus was limited to lifting and

carrying no more than twenty pounds and could stand or walk for a total of six hours in an eight

hour workday. (Tr. at 380.) Dr. Gauthier also found that DeJesus had no postural or

manipulative limitations and that he had an unlimited ability to push and pull. (*Id.* at 380-84.)

#### b. Dipti Joshi, M.D.

The Division of Disability Determination referred DeJesus to Dr. Joshi for an internal

medical examination. (Tr. at 355.) On November 15, 2011, Dr. Joshi issued a "fair" prognosis,

---

[2] There are significant temporal gaps in the medical records provided. For example, after both his renal transplant and right hip replacement, there is no indication that DeJesus had any scheduled follow-up visits and when he complained of lower back pain in 2009, the records do not indicate that he received any treatment for this pain.

and determined that DeJesus should avoid strenuous exertion. (*Id.* at 357.) He noted that

DeJesus had pain in his left anterior shin that grew worse with walking. (*Id.*) Dr. Joshi also

reported that DeJesus was not in acute distress, displayed a normal gait and stance, could walk

on his heels and toes without difficulty, did not require any assistive devices, needed no help

changing for his examination or getting on and off the examination table, and could rise from his

chair without difficulty. (Tr. at 355-56.) Additionally, Dr. Joshi found that DeJesus had no

musculoskeletal or neurological abnormalities and noted that DeJesus cooked twice a week, did

laundry once a week, and shopped daily. (*Id.*)

### c. Daniel Glicklich, M.D.

DeJesus first visited Dr. Glicklich on March 23, 2005. (Tr. at 502.) On April 3, 2012, Dr.

Glicklich issued a "chronic" prognosis and noted that DeJesus's condition resulting from his

renal transplant, hypertension, and right hip avascular necrosis could last at least twelve months.

(*Id.*) Dr. Glicklich described DeJesus's symptoms as pain in the hip from avascular necrosis and

limited movement and mobility. (*Id.*) He noted that DeJesus took Tylenol and other

medications for pain and that, while none of DeJesus's conditions required him to lie down

during the day, his right hip avascular necrosis could produce pain. (*Id.* at 503.) As a result, Dr.

Glicklich determined that DeJesus required an orthopedic assessment. (*Id.* at 506.)

### 3. The ALJ's Findings

On March 18, 2013, ALJ James Kearns issued a decision that DeJesus's disability under

sections 216(i) and 223(f) of the SSA ended as of December 6, 2011. (Tr. at 37.) Although the

ALJ acknowledged that DeJesus had a severe impairment of renal disease in 2004, he found that

DeJesus no longer had an impairment or combination of impairments that met or medically

equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 33.)

5

The ALJ relied upon medical evidence that indicated that, as of December 6, 2011, there had been medical improvement in DeJesus's condition related to his ability to work. (*Id.*) The ALJ found that DeJesus had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) "except for the ability to perform only simple and repetitive tasks."[3] (*Id.*)

To support his conclusion that DeJesus's severe impairment did not meet a listed impairment, the ALJ noted that DeJesus "ambulate[d] effectively" and that the medical record did not indicate that he suffered from any of the "indicative" symptoms of kidney dysfunction set out in 20 C.F.R. § Part 404, Subpart P, Appendix 1, such as rejection episodes, side effects of immunosuppressants, frequent renal infections, or systemic complications. (Tr. at 33.)

In determining that DeJesus had medically improved, the ALJ cited Dr. Joshi's findings that DeJesus did not appear to be in acute distress, had a normal gait, squat and stance, required no assistive devices, and needed no help changing during the examination or getting on and off the examination table. (*Id.*) The ALJ found that DeJesus's medical improvement was related to his ability to work, relying again on the absence of any symptoms "indicative" of kidney dysfunction. (*Id.*)

To support the conclusion that DeJesus possessed the RFC to perform light work "except for the ability to perform only simple and repetitive tasks," the ALJ afforded "great weight" to Dr. Joshi's findings but also cited Dr. Glicklich. (*See id.* at 35.) The ALJ noted that Dr. Glicklich's report indicated that DeJesus had some limited mobility but did not opine on any specific limitations and instead directed that inquiry to an orthopedist. (*Id.* at 35.) The ALJ

---

[3] The ALJ's finding as to whether DeJesus was capable of performing simple and repetitive tasks is ambiguous. *See* Tr. at 34 (finding that DeJesus had the RFC to perform light work "except for the ability to perform only simple and repetitive tasks). *Contra* Tr. at 52 (asking vocational expert whether there were jobs available for a person "only capable of performing simple and repetitive tasks.")

6

determined that Dr. Glicklich's referral meant that DeJesus had no significant functional limitations resulting from the transplant and that Dr. Joshi's findings did not support a finding of disability. (*Id.*)

The ALJ also found that DeJesus undermined his credibility when he reported his daily living activities to Dr. Joshi because his activities were inconsistent with a finding that his impairments were disabling. (Tr. at 35.) Specifically, the ALJ discussed DeJesus's ability to cook twice a week, do laundry once a week, and shop daily. (*Id.*) He noted that DeJesus testified to traveling to the Dominican Republic every couple of years and had stayed there fifteen days last year. (*Id.*)

## C. Appeals Council Review

After the ALJ's decision on March 18, 2013 DeJesus requested review by the Appeals Council on April 26, 2013, (Tr. at 24, 37.) The Appeals Council denied DeJesus's request for review on May 13, 2014. (Pet'r Compl. at ¶ 8.)

## III. DISCUSSION

### A. Standard of Review

Upon judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c) (3). Therefore, a reviewing court does not determine de novo whether a claimant is disabled. *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *accord Mathews v. Eldridge*, 424 U.S. 319, 339 n.21 (1976) (citing 42 U.S.C. § 405(g)). Rather, the court is limited to "two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g);

*Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) (citing *Johnson*, 817 F.2d at 986); *accord*

*Brault*, 683 F.3d at 447.  Second, the court must decide whether the Commissioner's decision is

supported by substantial evidence in the record.  42 U.S.C. § 405(g).  If the Commissioner's

decision meets both of these requirements, the reviewing court must affirm; if not, the court may

modify or reverse the Commissioner's decision, with or without remand.  *Id.*

An ALJ's failure to apply the correct legal standard constitutes reversible error, provided

that the failure "might have affected the disposition of the case."  *Pollard v. Halter*, 377 F.3d

183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)); *accord*

*Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  This applies to an ALJ's failure to follow an

applicable statutory provision, regulation, or Social Security Ruling ("SSR").  *See, e.g., Kohler*,

546 F.3d at 265 (regulation); *Schaal v. Callahan*, 933 F. Supp. 85, 93 (D. Conn. 1997) (SSR).  In

such a case, the court may remand the matter to the Commissioner under sentence four of 42

U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair

record to explain her reasoning.  *Crysler v. Astrue*, 563 F. Supp. 2d 418, 428 (N.D.N.Y. 2008)

(citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999)).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the

court must "conduct a plenary review of the administrative record to determine if there is

substantial evidence, considering the record as a whole, to support the Commissioner's

decision."  *Brault*, 683 F.3d at 447 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).

The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)); *accord Brault*, 683 F.3d at 447-48.  The substantial evidence

8

standard means once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i).  The SSA requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which it is based." 42 U.S.C. §§ 405(b)(1).  While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler v. Astrue*, 546 F.3d 260, 269 (2d Cir. 2008) (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01 Civ. 1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded evidence typically requires remand).  The ALJ must discuss the "the crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

### B.  Determination of Disability

#### 1.  Evaluation of Disability Claims

Under the Social Security Act, every individual considered to have a "disability" is entitled to disability insurance benefits.  42 U.S.C. § 423(a)(1).  The SSA defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which may result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* at §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505, 416.905.  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505, 416.905.

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry:  (1) determine whether the claimant is currently engaged in any substantial gainful activity; (2) if not, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to do basic work activities; (3) if so, determine whether the impairment is one of those listed in Appendix 1 of the regulations – if it is, the Commissioner will presume the claimant to be disabled; (4) if not, determine whether the claimant possesses the RFC to perform his past work despite the disability; and (5) if not, determine whether the claimant is capable of performing other work.  20 C.F.R. § 404.1520; *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999).  While the claimant bears the burden of proving disability at the first four steps, the burden shifts to the Commissioner at step five to prove that the claimant

is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

The ALJ may find that a claimant is disabled at either step three or step five of the Evaluation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step three, the ALJ will find that a disability exists if the claimant proves that his or her severe impairment meets or medically equals one of the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant fails to prove this, however, the ALJ will complete the remaining steps of the Evaluation. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(5), 416.920(e), 416.945(a)(5).

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *see also* S.S.R. 96-9P (clarifying that a claimant's RFC is her maximum ability to perform full-time work on a regular and continuing basis). The ALJ's assessment of a claimant's RFC must be based on "all relevant medical and other evidence," including objective medical evidence, such as x-rays and MRIs; the opinions of treating and consultative physicians; and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1545(a)(3)); *see also* 20 C.F.R. §§ 404.1512(b), 404.1528, 404.1529(a), 404.1545(b).

In evaluating the claimant's alleged symptoms and functional limitations for the purposes of steps two, three, and four, the ALJ must follow a two-part process, first determining whether the claimant has a "medically determinable impairment that could reasonably be expected to produce [her alleged] symptoms." 20 C.F.R. §§ 404.1529(b), 416.929(b); *Genier*, 606 F.3d at 49. If so, then the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work."

20 C.F.R. § 404.1529(c); *see also* 20 C.F.R. § 416.929(c); *Genier*, 606 F.3d at 49.  The ALJ has

"discretion in weighing the credibility of the claimant's testimony in light of the other evidence

of record." *Genier*, 606 F.3d at 49 (citing *Marcus v. California*, 615 F.2d 23, 27 (2d Cir. 1979));

*see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (requiring that a claimant's allegations be

"consistent" with medical and other evidence); *Briscoe v. Astrue*, No. 11 Civ. 3509 (GWG),

2012 WL 4356732, at *16-19 (S.D.N.Y. Sept. 25, 2012) (reviewing an ALJ's credibility

determination).  In determining whether there is any other work the claimant can perform, the

Commissioner has the burden of showing that "there is other gainful work in the national

economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)

(citation omitted).

### 2. Medical Improvement

Once a claimant establishes the existence of a disability, continued entitlement to disability

benefits "must be reviewed periodically," 20 C.F.R. § 416.994(a), and, although the

Commissioner may terminate the payment of disability benefits if he determines that the

claimant's disability has ceased, 42 U.S.C. § 425(a), there exists a presumption that the

classification will not change unless the "condition, governing statutes, or regulations change."

*De Leon v. Secretary of Health and Human Services*, 734 F.2d 930, 935 (2d Cir. 1984).  Under

the medical improvement standard, the Commissioner may terminate the benefits of a previously

disabled individual "only upon substantial evidence that the individual's condition has improved

to the point that he or she is no longer disabled, or that the initial finding of disability was

erroneous." *Id.* at 936. *See also Tirado v. Bowen*, 690 F. Supp. 296, 298 (S.D.N.Y. 1988).  Upon

review, the Commissioner "must determine if there has been any medical improvement in [a

person's] impairment(s), and, if so, whether this medical improvement is related to the person's

ability to work." 20 C.F.R. § 416.994(b).  Medical improvement means "any decrease in the medical severity" of an impairment.  *Id.* § 416.994(b)(1)(i).  To make a finding of medical improvement, the Commissioner must compare the claimant's condition at the time of review with his condition at the time that disability benefits were initially granted.  *Irvin v. Heckler*, 592 F. Supp. 531, 535 (S.D.N.Y. 1984).

The Commissioner must evaluate a claim of continuing disability using the sequential evaluation process that is employed when making an initial determination of disability.  *Irvin v. Heckler*, 592 F. Supp. at 538.  If the claimant is not engaged in substantial gainful activity, suffers from a severe impairment that is not listed in Appendix 1 of the regulations, and does not have the RFC to perform his past work, the Commissioner will consider the claimant's age, education, and work experience to determine whether there is other work in the national economy which the claimant could perform.  *Id.*  If such work exists, the claimant's disability will have ended.  *See id.*

### 3.  Treating Physician Rule

The opinion of a claimant's treating physician is generally given more weight than the opinion of a consultative physician because the treating physician is likely "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (discussing the "treating physician rule of deference").  A treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must attempt to fill any clear gaps in the administrative

record, *Burgess*, 537 F.3d at 139, especially where the claimant's hearing testimony suggests that the ALJ is missing records from a treating physician.

Second, the ALJ must give advance notice to a *pro se* claimant of adverse findings. *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 545 (S.D.N.Y. 2004) (citing *Infante v. Apfel*, No. 97 Civ. 7689 (LMM), 2001 WL 536930, at *6 (S.D.N.Y. May 21, 2001)).   This allows the *pro se* claimant to "produce additional medical evidence or call [her] treating physician as a witness." *Brown v. Barnhard*, No. 02 Civ. 4523 (SHS), 2003 WL 1888727, at *7 (S.D.N.Y. April 15, 2003) (citing *Santiago v. Schweiker*, 548 F. Supp. 481, 486 (S.D.N.Y. 1981)).

Third, the ALJ must explicitly consider various "factors" to determine how much weight to give to the opinion of a treating physician. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)).   These factors include:  (1) the length, nature, and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors brought to the attention of the ALJ that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2) (i-ii) & (c)(3-6).

Fourth, the ALJ is required to explain the weight ultimately given to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); *see also Halloran*, 362 F.3d at 32 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the

weight assigned to a treating physician's opinion."). Reasons that are conclusory fail the "good reasons" requirement. *Gunter v. Comm'r of Soc. Sec.*, 361 Fed. Appx. 197, 199 (2d Cir. 2012) (finding reversible error where an ALJ failed to explain his determination not to credit the treating physician's opinion). The ALJ is not permitted to arbitrarily substitute his own judgment of the medical proof for the treating physician's opinion. *Balsamo*, 142 F.3d at 81.

### 4. The ALJ did not apply the correct legal principles.

#### a. The ALJ Failed to Follow the Treating Physician Rule

The ALJ did not make clear who the treating physician was and he failed to address the conflicting prognoses of Dr. Joshi and Dr. Glicklich. Although he afforded "great weight" to Dr. Joshi's opinion that DeJesus did not exhibit any abnormalities in his gait, stance, or ability to ambulate, Dr. Joshi's report specifically stated that no doctor-patient relationship should be implied from the consultation, indicating that he was not the treating physician. (Tr. at 357.) The ALJ not only failed to name a treating physician, but he also failed to examine the factors relevant in determining how much weight to give other medical opinions. (*Id.* at 35.) Unlike Dr. Joshi's "fair" prognosis issued in 2011, (Tr. at 357), Dr. Glicklich issued a "chronic" prognosis in 2012, (Tr. at 503.) The ALJ did not address these conflicting opinions nor did he provide support for affording Dr. Joshi's opinion more weight.

The SSA defines medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including symptoms, diagnosis and prognosis, what [claimants] can still do despite impairment(s), and physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Additionally, the SSA "will evaluate every medical opinion [it] receive[s]," regardless of its source. *Id.* at § 404.1527(c). Unless it gives controlling weight to a treating source, the SSA

15

will determine what weight to give any medical opinion based on the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors brought to the attention of the ALJ that support or contradict the opinion. *Id.* at §§ 404.1527(c)(2) (i-ii) & (c)(3-6). Dr. Glicklich, who has been treating DeJesus since 2005, issued a chronic prognosis and a diagnosis of a renal transplant and right hip avascular necrosis, and also described DeJesus's symptoms and physical restrictions. (Tr. at 502-06.) Therefore, Dr. Glicklich's opinion constitutes a "medical opinion" under the SSA and the ALJ should have determined what weight to give his opinion.

The ALJ failed to provide "good reasons" for discrediting Dr. Glicklich's opinion. Even if the ALJ found that Dr. Glicklich's opinion was inadequate, the ALJ had the duty to seek additional information from Dr. Glicklich *sua sponte. Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998); *see also Perez,* 77 F.3d at 47 ("[T]he ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel . . . "); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) ("An ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." (citing *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999)). The ALJ's cursory explanation that Dr. Glicklich's referral to an orthopedist "indicates that DeJesus had no functional limitations," (Tr. at 35), does not satisfy the "good reasons" standard. *See Gunter,* 361 Fed. Appx. 197, 199 (noting an ALJ's "incantatory repetition of the words 'substantial evidence'" does not indicate why one medical opinion should be credited over another.). The ALJ did not satisfy his duty to seek additional information from Dr. Glicklich regarding his

referral.  This failure is particularly problematic in light of the conflicting prognoses in this case

and in light of Dr. Glicklich's long-term doctor-patient relationship with DeJesus.

The ALJ's failure to provide "good reasons" for giving no weight to Dr. Glicklich's

medical opinion coupled with his failure to assess the factors relevant in determining the weight

to give a medical opinion constitutes legal error.

### b.  The ALJ Failed to Consider All of DeJesus's Symptoms

In determining whether a claimant is disabled, the ALJ must consider all symptoms,

"including pain."  20 C.F.R. § 404.1529(a).  Additionally, when evaluating a claimant's

symptoms, the ALJ must evaluate "statements and reports from [the patient], [the patient's]

treating and nontreating source… and any other evidence showing how [the patient's]

impairments…affect [his] ability to work."  (*Id.*)  The ALJ did not address DeJesus's testimony

regarding his pain and inability to sleep well, (Tr. at 47-51), and failed to consider medical

reports from 2011, which acknowledged that DeJesus "stated more than once that his hip was in

pain" and noted that he had difficulty sitting and sleeping. (*Id.* at 151.)

In a November 2011 report, DeJesus claimed that he could no longer "work with full

capacity and effort" and used a cane.  (Tr. at 154, 160.)  He reported that walking, sitting,

climbing stairs, kneeling, and squatting caused him sharp pain in his hip and kidney that lasted

for a couple of minutes.  (*Id.* at 159, 161.)  DeJesus also listed that he was able to do "light duty"

laundry but needed help with heavy duty chores and "bending tasks."  (*Id.*)

One month later, on December 13, 2011, a medical report indicated that DeJesus had

difficulty sitting, standing, and walking.  (Tr. at 166.)  In this report, DeJesus stated that he could

not stand for long periods of time because of his hip replacement and reported that he

experienced pain in his midsection from bending at the waist.  (*Id.* at 175.)

In evaluating the record, the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson*, 557 F.3d 79, 82-84.  By minimizing Dr. Glicklich's opinion and failing to mention the 2011 reports that corroborate DeJesus's symptoms, the ALJ mischaracterized evidence in the record and misapplied the legal standard.

### 5. The ALJ's decision is not supported by substantial evidence in the record.

### a. The ALJ Improperly Determined that DeJesus Medically Improved

The ALJ's decision to terminate DeJesus's disability benefits is premised on the unsupported assertion that DeJesus has a severe impairment but is capable of performing light work. (Tr. at 34.) In making this determination, the ALJ failed to consider the effect of the combination of DeJesus's impairments on his ability to engage in substantial gainful activity by only considering the signs, symptoms, and laboratory findings associated with kidney dysfunction and ignoring any issues associated with his hip replacement. (*Id.* at 34-35.)  When determining a claimant's physical abilities, the SSA must "analyze the effect of the combination of…impairments on plaintiff's ability to engage in substantial gainful activity," *Irvin*, 592 F. Supp. at 540. Additionally, light work requires a "good deal of walking or standing" or involves "sitting most of the time." 20 C.F.R. 404.1567(b) and a person who can perform light work must have the ability to do "substantially all" of the activities associated with light work. *Id.*

The ALJ found that DeJesus had experienced medical improvement because "there had been a decrease in medical severity of the impairment" due to the "absence of symptoms, signs, and laboratory findings indicative of kidney dysfunction." (Tr. at 33-34.)  In addition to ignoring any signs, symptoms, or laboratory findings related to DeJesus's hip replacement, the ALJ incorrectly relied solely on Dr. Joshi's medical report finding that DeJesus need only avoid "strenuous exertion." (*Id.* at 355-57.)  The record shows that the ALJ did not try to reconcile Dr.

Joshi's conclusions with DeJesus's testimony and other medical evidence indicating that DeJesus was in a significant amount of pain that would limit his ability to peform light work.  (Tr. at 33-37.)

Dr. Glicklich's "chronic" prognosis and findings of DeJesus's limited mobility, (Tr. at 502-06), coupled with DeJesus's testimony regarding his pain and daily living activities, (Tr. at 46-51), indicate that the ALJ incorrectly characterized DeJesus as able to perform light work.  In sum, the evidence in the record does not indicate that DeJesus's condition had improved to the point that he was no longer disabled as of December 6, 2011 or that the initial finding of disability was erroneous. Accordingly, the Commissioner failed to rebut the presumption of DeJesus's continuing disability, and the decision to terminate his disability benefits is not supported by substantial evidence.

### b. The ALJ Failed to Evaluate All of the Relevant Evidence in Determining DeJesus's RFC.

The ALJ relied only on Dr. Joshi's medical opinion and disregarded the rest of the record in determining DeJesus's RFC. (*Id.* at 35.)  The ALJ gave no weight to Dr. Glicklich's "chronic" prognosis, which was more recent than, and inconsistent with, Dr. Joshi's determination.  The ALJ erroneously substituted his own opinion for the opinion of Dr. Glicklich, who did not discuss DeJesus's functional limitations. *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983). (holding that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.")  Additionally, the ALJ did not consider the 2011 medical reports that contradicted Dr. Joshi's determination.  (Tr. at 35, 151-75, 357, 502.)

Among the ALJ's legal obligations is the duty to adequately explain his reasoning in making the findings on which his ultimate decision rests, and to address all pertinent evidence. *Caldaza*, 753 F. Supp. 2d 250, 269.  The crucial factors in any determination must be set forth

with sufficient specificity to enable the reviewing court to decide whether the determination was supported by substantial evidence, and the ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error. *Id.* Here, the ALJ merely noted the non-existence of certain symptoms without citing a medical opinion and incorrectly concluded that Dr. Joshi's opinion was "consistent with the claimant's allegations of pain and medical history." (Tr. at 35.) DeJesus testified several times that it was impossible for him to work or sleep well from the pain, (Tr. at 48, 50, 51.) and his medical records indicate that he had limited mobility, (Tr. at 502), experienced "sharp pain," (Tr. at 161), and had trouble sitting, standing, and walking, (Tr. at 166.)

In evaluating the relevant evidence in a claimant's record, the ALJ may not mischaracterize evidence of a person's alleged disability. *Ericksson*, 557 F.3d 79, 82-84. Additionally, the ALJ may not assign conclusive weight to a claimant's daily activities in determining whether a person is capable of maintaining employment. *Vasquez v. Barnhart*, No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004). A claimant "need not be an invalid to be found disabled." *Balsamo v. Chater*, 31 C.C.P.A. 1034, 142 F.2d 75, 81 (2d Cir.1998) (quoting Williams v. Bowen, 859 F.2d 255, 260 (2d Cir. 1988) (internal citations omitted). Moreover, when a person chooses to endure pain on his own accord in order to participate in daily living activities, the ALJ should not "hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." *Balsamo*, 142 F.2d at 81-82. DeJesus's ability to occasionally fold laundry, cook, or walk several blocks does not indicate that he is capable of working.

During the hearing, DeJesus testified that it was "impossible" to work because he experienced pain in his lower back and legs. (Tr. at 48, 50.) Although DeJesus testified that he

could lift and carry five to ten pounds, (*Id.* at 50.), he also testified that he regularly sees a doctor

for his kidney, (Tr. at 48), and has trouble sleeping, (*Id.* at 51.)  DeJesus further testified that he

has trouble sitting and standing because he experiences pain.  (*Id.* at 50.)  A fair reading of

DeJesus's report of his daily living activities is that he is capable of taking care of himself on a

daily basis but that any extended period of standing, sitting or walking causes severe pain. The

ALJ improperly misconstrued DeJesus's report of his daily living activities, and determined that

it "further undermined" his credibility.  (Tr. at 35.)

   The ALJ failed to assess all relevant medical evidence and incorrectly afforded

conclusive weight to DeJesus's report of his daily living activities. Thus, his determination was

not supported by substantial evidence in the record.  *See* 20 C.F.R. § 404.1545(3); *See also*

*Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded evidence typically requires

remand).

### c. The ALJ Failed to Assess the Entirety of the Vocational Expert's Testimony

   A vocational expert may testify, based on a hypothetical question, to the existence and

number of jobs in the national economy that a claimant with a particular RFC can perform.  *See*

20 C.F.R. § 416.966(e).  The ALJ ignored the vocational expert's response to the hypothetical

regarding the availability of jobs for a person who would have unscheduled absences of at least

once a week.  (Tr. at 36, 53.)  Instead, the ALJ relied on the vocational expert's testimony that

there are jobs available for an individual capable of performing simple and repetitive tasks at the

light work level.  (*See Id.* at 36.)

   In addition to ignoring the vocational expert's response to the hypothetical regarding job

availability for persons with regular absences, the ALJ's findings are inconsistent with the

vocational expert's opinion regarding the availability of jobs for people capable of performing

simple and repetitive tasks at a light work level.  The ALJ asked the vocational expert whether a

person capable of performing *"only"* simple and repetitive tasks had access to jobs.  (*Id.* at 52.)

(emphasis added).    However, the ALJ found that DeJesus had the residual functional capacity to

perform light work *"except* for the ability to perform *only* simply and repetitive tasks."  (*Id.* at

34.) (emphasis added).  By both ignoring and misconstruing the vocational expert's responses to

the hypotheticals, the ALJ failed to accurately assess all relevant evidence, and thus, his

determination was not supported by substantial evidence in the record.  *See* 20 C.F.R. §

404.1545(3); *See also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded evidence

typically requires remand).

### 6. The case should be remanded for further administrative proceedings.

DeJesus requests that the court modify the Commissioner's decision to grant monthly

maximum insurance or SSI benefits to DeJesus, or in the alternative, remand the case for

reconsideration of the evidence.  (Pet'r Compl. at ¶ 9(a).)  A court should order remand to

determine payment of benefits only where the record contains "persuasive proof of disability"

and remand for further evidentiary proceedings would serve no further purpose.  *Schall v. Apfel*,

134 F.3d 496, 504 (2d Cir. 1998) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

Remand for further administrative proceedings is appropriate "[w]here there are gaps in the

administrative record or the ALJ has applied an improper legal standard."  *Rosa v. Callahan*, 168

F.3d 72, 82-83 (2d Cir. 1999).  As discussed above, the ALJ failed to supplement the gap he

acknowledged in DeJesus's administrative record (Dr. Glicklich's referral to an orthopedist), and

did not address Dr. Joshi and Dr. Glicklich's conflicting prognoses. Furthermore, the ALJ

applied the wrong legal standards. Thus, the record supports the finding that further evidentiary

proceedings would serve a purpose and remand solely for calculations of the benefits is not

warranted. The case should be remanded for a supplemental hearing to further develop the record and to reassess DeJesus's RFC in accordance with SSA regulations.

## IV.  CONCLUSION

For the reasons set forth above, I recommend that the Commissioner's motion for judgment on the pleadings be **DENIED**, and that the case be **REMANDED** for further administrative proceedings.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable William H. Pauley, 500 Pearl Street, Room 1920, and to the chambers of the undersigned, 500 Pearl Street, Room 1970.  Failure to file timely objections shall constitute a waiver of those objections in both the District Court and on later appeal to the United States Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed.R.Civ.P. 72, 6(a), 6(d).

**DATED: July 24, 2015**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge